Judge Marshall

delivered the Opinion of the Court,
The statute of 1811, “to amend the law respecting executors, administrators and heirs,” does not change the order of administering assets, nor the liability of the executor or administrator for a mal administration. And in limiting the judgment in an action for a devastavit, to the amount of assets unadministered at the time of the original judgment against the executor or administrator, it means the amount of assets not administered according to law. The statute relieves the fiduciary representative from the consequences of a false plea, or a failure to plead. It authorizes him under the plea of plene administravit, in the action for a devastavit, to show the amount of assets unadministered at the date of the first judgment; but it furnishes no new rule for administering the assets, and no new test of the correctness of the administration, The effect of the statute is to put him in the same condition, and with the same privileges, under the plea of plane administravit in the action which charges him personally, as he was placed in by the common law, under the plea of plene administravit in the action brought against him in his representative character. A late statute has indeed changed the order of administration, but this case having a risen prior to the enactment of that statute, must be determined by the laws previously existing.
The first question, then, upon the administration of the assets, as shown in this case, is whether an executor who is sued by one specialty creditor of the intestate, may, after service of process, and before judgment in that suit, make voluntary payment to another specialty creditor who *344 has not sued and has no judgment, and thereby deprive the suing creditor of the fruits of his action. This question seems to be well settled, in the negative by the common law, and we are not authorized to change the rule. 3 Bacon’s Abridgement, Executors and Administrators, L. 2. 1 Com. Dig. Administration, c. 2. 4 Peer Williams, 401-2. From which it appears that, although, if a suit be commenced by one bond creditor, of which the executor has notice, he may afterwards confess judgment to another and pay him first; yet after notice of a suit, he cannot pay another debt of the same degree before judgment for it. There is no unfairness or injustice in saying that the first suitor shall be first satisfied. And if the executor is allowed to deprive him of his precedency by confessing judgment to a more dilatory creditor, and thus giving superior dignity to his demand — fit does not necessarily follow that he should be allowed to do so by a voluntary payment, when the favored creditor not only has no judgment, but has not even commenced a suit. It is sufficient, however, that the rule upon this subject is settled by the ancient authorities, and is not, so far as we have seen, disturbed by more modem adjudications.
According to the modern doctrine (tho’ anciently it was otherwise,) an ex’or who has paid a debt of the testator for which he was bound as the surety of the testator, may retain the amount, at least, as for a simple contract debt. But he has that right only when he has paid the debt, not in consequence of his mere liability for it. And he cannot gain an advantage over a specialty creditor who has bro’t suit, nor any right of retainer as against him, by afterwards paying a specialty debt for which he himself is the testator’s surety, any more than he could by paying or purchasing any other of the testator’s debts. But, as he cannot confess a judgt. to himself, he would seem to be entitled to a preference over other bond creditors who have not sued.
*344 In this case, however, the executor was co-obligor with the testator, and probably his security in most or all of the specialty debts which he paid after service of process and before judgment obtained by the suing creditor; and the second question is, whether this circumstance places the intermediate payment on any better ground. It seems to have been the ancient doctrine that, in such a case, the executor could not even retain, because by entering into the bond he had made the debt his own. (2 Williams on Executors, 692, and authorities there referred to.) But the modern and more reasonable doctrine is, that he may retain, at least as for a simple contract debt. And in equity, he would probably be substituted to the place of the bond creditor whose debt he had paid. But conceding to him this advantage, it would be unavailing under the plea of plene administravit. For as he would not be entitled, in equity, to stand in the place of the bond creditor until he makes payment of the bond, and, if he does not pay until after service of process by another *345 bond creditor, he would still, as a bond creditor, be posterior to him who has sued, and cannot retain against him, on the ground of substitution, any more than he could by paying or purchasing any other bond debt during the pendency of the suit — unless the fact of his being a co-obligor and security of the intestaté, should be considered as, not only substituting him to the rights of the obligee, from the time when he pays the bond, but as giving to the bond itself a superior dignity and priority overall other bond debts, from the time of the grant of administration; for which there seems to be neither reason nor authority. It is true, the administrator cannot, after paying the bond in which he is bound as surety, confess a judgment to himself, and thereby gain a regular priority to his demand; and for this reason, he would, upon the concession made, be entitled to precedency over all bond creditors who had not sued. But it would be carrying the doctrine of substitution farther than it has been carried by any case with which we are acquainted, to say that, even in equity, the voluntary payment by the executor, of a bond in which he is surety, should give him the rights of a judgment creditor. Much less can this doctrine be sustained in a court of law.
The verdict and judgment.
The declaration.
The determination of these points; decides that there was no error in granting the first new trial, after a verdict for the defendant, under instructions at variance with this opinion; and also, that there was no error in after-wards refusing a new trial to the defendant — as, upon the application of the principles now settled, to the evidence before the jury, on the last trial, they were bound to find assets in the hands of the administrator, unadministered at the date of the first judgment, to at least the amount of the debt now sought to be coerced, and of the judgment now complained of.
The verdict, though informal, in finding damages only and not the debt in the declaration mentioned; was substantially good, and the same defect in the judgment is not fatal. Both of these points have been heretofore decided.
The declaration, also, though in artificially and immethodically drawn, shows substantially a breach of the executor’s bond, in showing a judgment for the debt against *346 the executor, and an execution thereon, with the return of “nulla bona,” leaving the judgment in part unsatisfied, and in alleging that assets more than sufficient to satisfy it had come to the executor’s hands, which he had wholly wasted. Wherefore, the judgment is affirmed.